## Kentucky Block Cannel Coal Company v. Milroy Milling Company.

(Decided February 17, 1925.)

### Appeal from Morgan Circuit Court.

1. Contracts—Question of Cancellation Determined in Light of Circumstances According to Parties' Understanding of Words.— Whether contract was canceled must be determined in light of all circumstances, according to parties' understanding of their words as shown by their conduct.

2. Contracts—Letters Passing Between Business Men Not Read with Technical Strictness in Determining whether Contract was Can-

celed.—Letters between business men are not to be read with technical strictness, in determining whether contract was canceled, question being what writers understood and intended recipients to understand.

3. Sales—Cancellation of Contract for Sale of Flour Held Shown.— Letters between parties to entire contract for sale of flour and mill feed, held to show cancellation thereof by buyer, as permitted by contract, on ground that feed in first shipment was unsatisfactory, so that seller could not recover damages for loss on flour by reason of decline in price after date for final shipment.

S. MONROE NICKELL for appellant.

McGUIRE & McGUIRE and E. MATHIS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing original appeal; affirming cross-appeal.

M. L. Conley was the superintendent of the Kentucky Block Cannel ·Coal Company. T. E. Allen was a traveling salesman who sold flour and mill feed to Conley, as a representative of the coal company, for several years. In the year 1920 Allen became the general manager of the Milroy Milling Company, located at Milroy, Indiana. In July, 1920, Allen sent Conley some quotations of prices on flour and mill feed. On July 16, 1920, Conley wrote Allen acknowledging the receipt of the quotations and adding this: "If you are in a position at any time to furnish us the best grade of flour around $13.00 per barrel (in cotton) and mill feed at not to exceed $50.00 per ton, delivered, we will be glad to consider contracting two or three cars, but at the figures we are not interested, as we could do better at local mills." On the 19th Allen wired Conley as follows:

"Letter received. Though your offer is entirely too low and cash wheat is in good demand for export at two dollars and eighty cents, have decided to book three cars of two hundred barrels our special highest grade flour in twenty-fours at thirteen dollars with eleven tons of feed in each sixty dollars scattered ninety days' shipment. Wire quick acceptance."

Not hearing from Conley on that day Allen, on the next day, sent the following by wire:

"July 20, '20. To Kentucky Block Cannel Coal Co., Cannel City, Ky. Wheat up ten cents. Did you

confirm as per our wire? Answer. Milroy Milling Co.''

On the same day he wrote as follows:

"Gentlemen: On receipt of your letter we wired you proposing to book two or three cars practically on the basis of your suggestions. Up to this time we are without your acknowledgment. Presume your wire is delayed. The market is radically advanced and we hope you have not failed to accept. Yours very truly, Milroy Milling Co.''

On July 20th Conley wrote Allen as follows:

"Mr. T. E. Allen, general manager, Milroy Milling Co. Your telegram of the 19th did not reach us until today, and as I was away was not received by me until this afternoon. We wired you in reply: 'Accept offer on three cars. See letter.' We decided to accept your proposition with the understanding that we are to try out one car of your product, as we have never used same and are not familiar with it. If the car proves satisfactory we will allow the other cars to come forward spaced about thirty days apart. If either your flour or feed is unsatisfactory to our trade we want to reserve the right to cancel same. Yours truly, the Kentucky Block Cannel Coal Company, M. L. Conley, Supt.''

On July 21st Allen sent Conley this by wire:

"Gentlemen: We are pleased to have your wire instructing us to book three cars as per our telegraphic proposition of the 19th. Will await the letter of further instructions before forwarding contract. Could you furnish a car cannel coal for shipment some time in the next sixty-five days? Please advise promptly as to this. It begins to look as if the coal will be difficult to obtain. Yours truly, Milroy Milling Company. By——, Gen. Mgr.''

On July 23rd Allen wrote Conley as follows:

"Kentucky Block Coal Company, Cannel City, Ky.

"Gentlemen: We have your good letter of the 20th. While we have never sold flour on the conditions you state before, we are so well acquainted with the integrity of your good firm and are so implicit in our confidence in our products that we cheer-

fully agree to the conditions outlined.    Enclosed find contract in duplicate covering the purchase, and this letter will be your protection on the quality we shall ship.    Kindly sign one contract and return one copy for our files.    Yours very truly, Milroy Milling Co., by ——, Gen. Mgr.    P. S.—We understand that you wish one car shipped promptly.    If not, please wire at our expense.''

The inclosed contract was a writing in the usual form, stating that the mill company had bought the quantity of flour and mill feed indicated in the letters, but before signing the contract Conley inserted in it these words: "If first car proves unsatisfactory, remainder may be cancelled,'' and on July 24th he wrote Allen as follows, inclosing the contract which he had signed:

"Mr. T. E. Allen, Gen. Mgr., Milroy Milling Co., Milroy, Indiana.

"Dear sir: We are in receipt of yours of the 23rd and are returning herewith confirmation of order for three cars of flour and feed, on which you will note that we have inserted additional terms agreed on.    We do not need the flour before about the 15th of August and it will be satisfactory to defer shipment of first car until about that time.    We would be glad to have you quote us on meal in 25 lb. bags, to be included in the first car.    We would probably want about 5,000 lbs.    Yours truly, Kentucky Block Cannel Coal Co., M. L. Conley, Supt.''

On July 27th Allen wrote Conley as follows:

"Kentucky Block Cannel Coal Co., Cannel City, Ky.

"Gentlemen: We have yours of the 24th, with return of signed contract covering the three cars of flour and feed.    Thank you.    We note you will not need the first car until about the 15th of August, but presume that if we have an opportunity to get it out a little earlier it will be satisfactory to you.    We are having some difficulty in getting cars, so that when we have a good oportunity to ship we do not like to pass it up.    Therefore, if we do not hear from you to the contrary we will let this go out some time between the first and the fifteenth of August, when an opportunity comes.    We regret to advise you that

we have not put in a corn mill yet, and, therefore, are unable to quote meal. We are now negotiating with a view of adding a corn mill to our plant and if we should do this will be glad to take the matter up with you further. Yours truly, Milroy Milling Company. By ——, General Manager.''

The first shipment was made about·August 8th or 10th and reached Conley about August 16th. On August 26th Conley wrote Allen as follows:

''Milroy Milling Company, Milroy, Indiana. Attention:

''Mr. T. E. Allen. Gentlemen: The car of flour and feed which you recently shipped us has been received, but the feed is wholly unsatisfactory to our trade. As far as I am advised there has not been any complaint on the flour, but we have not had much opportunity to judge as to how it will go. The grade of feed we have been handling will bring $1.00 per (100) hundred pounds more than the grade you shipped us. Yours truly, the Kentucky Block Cannel Coal Company. C/EW''

On September 16th Allen wrote Conley as follows:

''The Kentucky Cannel Coal Company, Cannel City, Ky.

''Gentlemen: Your letter of August 26th was neglected because it was directed to the attention of the writer who was absent at the time. However, it is perhaps as well, because you have had time to give the flour and feed a thorough trial. We regret very much if the feed does not suit and we propose installing a regrinder for making this feed finer a little later on. The feed we shipped you is the only type of mixed feed we have at present. Under the circumstances, we would like to be advised what you think we should do in this matter. If we can buy the 22 tons of feed due you to complete the order two cars going out and ship you regular 'shorts' against this mixed feed contract, will this satisfy you? No doubt we will have to take a loss of $5.00 per ton for this purpose, but we want you to feel safe in placing your order with us and that we propose to do the right thing at all times. Let us hear from you. Yours truly, by T. L. Allen.''

Nothing further passed between the parties until December 23rd, 1920, when Allen wrote Conley demanding pay and on December 31st he wrote this:

"Kentucky Block Cannel Coal Co., Cannel City, Ky.

"Gentlemen: As per our letter of the 23rd we are handing you herewith invoice for cancellation of your contract of July 21st, balance due on same being 400 bbls. flour and 22 tons of feed. We would rather, by at least $300.00, ship this contract because our loss in cancelling is more than the invoice indicates. But we have sought to be considerate and anticipate your check to cover promptly. Yours very truly, Milroy Milling Company, by T. E. Allen, General Manager."

The coal company did not answer either letter and on February 8, 1922, the milling company brought this suit against the coal company to recover $1,518.00 as damages for the breach of the contract by the coal company in failing to take the other two cars. The coal company paid for the car that it received when it received it and the whole controversy turns on whether it had cancelled its order for the other two cars. The circuit court held in substance that the order for the mill feed was cancelled but that the order for the flour was not cancelled, and entered judgment in favor of the plaintiff for $1,100.00. From this judgment the defendant appeals. The plaintiff prosecutes a cross-appeal from so much of the judgment as denies damages on the mill feed.

The written contract contains these words: "Time of shipment scattered ninety days." This provision read in the light of the letters was clearly understood by the parties to mean that the goods were to be shipped in three monthly shipments. The first shipment was made early in August; the other shipments should have followed early in September and early in October according to the meaning of the parties when the contract was made. The writing also provided that the sale is made subject to the terms and conditions on the back thereof. One of the conditions on the back is that the buyer shall furnish shipping instructions to the seller not less than fifteen days prior to the time of shipment requested. If the buyer shall fail to file with the shipper shipping instructions within fifteen days prior to the expiration of the contract time of shipment, then the seller shall have the right, among other things, of reselling the goods for

buyer's account. Appellee insists that appellant having failed to send shipping instructions it is liable under this clause of the contract; but back of this is the question whether the contract had been cancelled.

This question must be determined in the light of all the circumstances according to the actual understanding of their words by both the parties at the time, as shown by their conduct. The whole correspondence was in writing. As shown by the letter of July 19th appellant agreed to try out one car of appellee's product as it had never used same and was not familiar with it, and it agreed if that car proved satisfactory it would allow the other cars to come forward, spaced about thirty days apart. These terms were cheerfully agreed to by appellee in its letter of July 23rd, as appellee was implicit in its confidence in its products and in that letter inclosing the contract it was said, "This letter will be your protection." Appellant signed the contract on the faith of this agreement. Appellant's letter of August 26th must be read in the light of the previous correspondence, and as that letter plainly said that the mill feed was not satisfactory it was notice to the appellee that the car did not prove satisfactory and that it would not allow the other cars to come formard. Appellee's letter of September 16th, written in answer to this letter, clearly shows that it was so understood, for it contains these words: "Under the circumstances we would like to be advised what you think we should do in the matter—we want you to feel safe in placing your order with us and we propose to do the right thing at all times." When the coal company did not answer this letter, the mill company was bound to know that the first car having proved unsatisfactory, appellant was not going to give shipping instructions for the other two cars; that the letter was so understood was clearlly shown by the fact that appellee at no time asked for shipping instructions or called appellant's attention to the fact that it had not heard from it. Appellant's silence here was a refusal to advise what appellee should do in the matter or to carry out the contract any further. The silence of appellee under the circumstances is explained by the fact shown by the record, that on September 20th appellee was selling flour about the same price as when it sold to the coal company. As the price of flour had not changed it did not concern appellee that appellant did not take the other two cars of flour, and therefore it acquiesced in appellant's failure to advise

what it should do.   There was no decided break in the price of flour until about October 20th.   But the shipping time of all this flour had expired under the contract before that time; for, as well understood by the parties, the shipments were to go forward monthly and should have been made about the first of September and the first of October.

The contract was to take so much flour and so much mill feed in each car.   The reason for this was that the government required a certain weight in each car, and this weight would take more flour that appellant wanted in a month.   The mill feed was put in to fill out the car. There was no contract to take the quantity of flour specified apart from the mill feed.   To do this would have added considerable burden in the way of additional freight charges.   If the mill feed was not satisfactory appellant had a right to cancel the contract for the other two cars.   The letters passing between appellant and appellee are letters of business men and are not to be read with technical strictness.   The question is, what did the writers understand and intend the other party to understand?   Read in this light these letters show that both the parties understood that the mill feed was unsatisfactory and that no further shipments were to be made unless the parties came to a further agreement. This they did not do, and the appellant is not answerable to appellee in damages for any loss on the flour. Allen well understood that the flour was not to be shipped without the mill feed.   He well understood from Conley's letter of August 16th that the mill feed was unsatisfactory and that no more of it would be taken.   His statement in the letter of September 16th that they would like to be advised what the coal company thought they should do in the matter, and wanted them to feel safe in placing the order with them, was written to carry out the letter of July 23rd stating, "This letter will be your protection." There had been no appreciable decline in the flour then, and the mill company could not in December, when there had been a great decline in flour, take a position inconsistent with the position it took in September.

Judgment reversed with directions to enter a judgment in favor of appellant as above indicated.   On the cross-appeal the judgment is affirmed.